IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DIETER M. FINCH,                      §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §
                                      §
TEXAS HEALTH AND HUMAN                §
SERVICES COMMISSION, TEXAS            §        CIVIL ACTION NO. H-13-3716
DEPARTMENT OF FAMILY AND              §
PROTECTIVE SERVICES, and              §
TEXAS DEPARTMENT OF AGING             §
AND DISABILITY SERVICES,              §
                                      §
        Defendants.                   §

MEMORANDUM & ORDER

Pending is Defendants Texas Health and Human Services Commission's, Texas Department of Family and Protective Services's, and Texas Department of Aging and Disability Services's Third Motion to Dismiss (Document No. 59).[1]  After carefully considering the motion, response, and applicable law, the Court concludes as follows.

I. Background

*Pro se* Plaintiff Dieter M. Finch ("Plaintiff"), a 76-year-old white male, alleges that since October, 2010 he has applied to

_____

[1]   Also pending are Plaintiff's Unopposed Request for Corrections of and Updates to Docket Sheet Entries (Document No. 65), Plaintiff's Request for Permission to Refile Plaintiff's Unopposed Request for Corrections of and Updates to Docket Sheet Entries (Document No. 66), and Plaintiff's Opposed Request for Corrections of Docket Sheet Entries (Document No. 82), which are without merit and are DENIED.

Defendants Texas Health and Human Services Commission, Texas Department of Family and Protective Services, and Texas Department of Aging and Disability Services (collectively, "Defendants") for hundreds of positions.[2]  Plaintiff alleges that Defendants have refused to hire him despite his 43 years of professional experience, "including 20 plus years as a management consultant with an undergraduate Business Administration GPA of 3.92 and graduate GPA of 4.00."[3]  Plaintiff alleges that he only received five interviews in a year and a half, and that in his vehicle driver interview, "the interviewer--black and in his 30's--had been one of the Plaintiff's--white--competitors for his position, the interview[er] for which, in turn, also was of the black race and in her 30's."[4]  Plaintiff also alleges that for the Director of Vocational Services position, "the only other shortlist candidate for this position was the interviewer--in his 30's--for the material handler/driver position, and whose position he vacated after only a few months of service resulting in the Plaintiff's second application for that vacated position with no response from the Defendant."[5]

---

[2] Document No. 26-1 at 1 of 42 to 2 of 42 (1st Am. Orig. Compl.).

[3] Document No. 26-1 at 10 of 42.

[4] Id.

[5] Id.

2

Plaintiff filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in September and October of 2011, alleging that Defendants discriminated and retaliated against him on the basis of his race, national origin, and age.[6] Plaintiff alleges that he made an additional 254 applications that have "remained unanswered" since that time.[7] Plaintiff alleges in this case retaliation and discrimination--characterizing the discrimination claims as both disparate treatment and disparate impact--on the basis of his race, white, and national origin in violation of Title VII,[8] and on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"). By Order signed February 12, 2015--which also describes the odd early-procedural circumstances that led to the present posture of the case--Plaintiff's age discrimination claims under the ADEA were dismissed for lack of jurisdiction.[9] Now pending is Defendants' Third Motion to Dismiss addressed to Plaintiff's First Amended

---

[6] <u>Id.</u>

[7] <u>Id.</u> at 10 of 42 to 11 of 42. As of May 19, 2014, Plaintiff alleges that he has applied for more than 325 positions. *See* Document No. 31 at 2 of 3.

[8] Although Plaintiff does not identify his national origin in the First Amended Complaint, exhibits with his response to a prior motion indicate that he is of German origin. *See* Document No. 14-2 at 27 of 30. Plaintiff also states he was discriminated against on the basis of gender, but he did not file an EEOC charge on that basis. *See* Document No. 26-1 at 10 of 42, 14 of 42.

[9] Document No. 56.

3

Complaint, in which Defendants argue that Plaintiff's disparate impact claim should be dismissed under Rule 12 (b)(1) and that Plaintiff's remaining claims should be dismissed under Rule 12(b)(6) for failure to state a claim.[10]

## II. <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>[11]

Defendants argue that Plaintiff's disparate impact claim should be dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies with regard to that claim.[12] Plaintiff, in his response, makes no substantive argument in opposition to Defendants' motion, instead stating that he "has already filed with this Court and extensively opposed, responded and objected to each and every prior Defendants' motion relative to any and all issues concerning Defendants' first and second motions to dismiss . . ."[13] Defendants, however, raise this jurisdictional argument for the first time in the pending motion, and it is not incumbent on the

---

[10] Document No. 59.

[11] The Fifth Circuit observed in <u>Pacheco v. Mineta</u> that there is disagreement on "whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction." 448 F.3d 783, at 788, n.7 (5th Cir. 2006). Because no alternative to the jurisdictional analysis is argued here, the Court considers this motion under Rule 12 (b)(1), as did the Fifth Circuit in <u>Pacheco</u>.

[12] Document No. 59 at 4-6.

[13] Document No. 61 at 1 of 2.

Court to explore all of Defendants' previous filings in search of a basis for Plaintiff's opposition.  The motion is therefore deemed substantively unopposed.[14]

A.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations.  *See* <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  The Fifth Circuit distinguishes between "facial" and "factual" attacks to subject matter jurisdiction.  <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981); *see also* <u>Irwin v. Veterans Admin.</u>, 874 F.2d 1092, 1096 (5th Cir. 1989).  A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenging the court's jurisdiction based solely on the pleadings.  *See* <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam); <u>Paterson</u>, 644 F.2d at 523.  On the other hand, a factual attack--as in this case--involves submission of evidence extrinsic to the complaint.  <u>Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.</u>, 104 F.3d 1256, 1261; <u>Paterson</u>, 644 F.2d at 523.  In response to a factual attack, the "plaintiff is also required to submit facts

---

[14] *See* Document Nos. 5, 23.

through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." Paterson, 644 F.2d at 523; see also Irwin, 874 F.2d at 1096.  So long as the jurisdictional issue does not implicate the merits of the plaintiff's claims, no presumption of truth attaches to the allegations in the complaint, and the court has broad discretion to weigh the evidence and resolve any disputes of fact.  See Garcia, 104 F.3d at 1261; Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

B.   Analysis

To state a claim for disparate impact, a plaintiff must show "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." Pacheco, 448 F.3d at 788.  However, before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC.  Id. at 788; Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002).   "The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers." Pacheco, 448 F.3d at 788.  "On the one hand, because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of the EEOC complaint should be construed liberally."

Id. (citing Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." Pacheco, 448 F.3d at 788-89 (citing Sanchez, 431 F.2d at 466-67). Accordingly, the Fifth Circuit "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Pacheco, 448 F.3d at 789. In this regard, courts must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Id. (citing Fellows, 701 F.2d at 451; Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993); Ong v. Cleland, 642 F.2d 316, 319 (9th Cir. 1981)).

Plaintiff filed three charges of discrimination with the EEOC, one against each of the three Defendants.[15] The Particulars section

---

[15] Document No. 59, exs. A, B, C.

in each charge contains virtually identical language,[16] which states, in full:

> I have applied for numerous job positions for Respondent. These openings are in different cities, such as Rosenburg, Houston, Sugarland, and Richmond, Texas. I have been applying since October 2010 and I have not been successful. This year, July 22, 2011. I complained to Directors Ms. Shelton (Rosenberg) and Ms. Evans (Little York office). My complaint has been transferred elsewhere, and I have followed up on my complaint, I have been told to complete a 185 question work ethics test, along with six additional tests. This was not done at the beginning of my application process, and the test is irrelevant to a clerk position. I also applied for the Director of Foster Grandparent position. This position was filled by a younger, black male Mr. Campbell, who has little to no experience. He interviewed me for a part-time driver position that had some clerical work. He and his assistant Ms. Denetria told me to take a communication test (computer). When I was about to take the test, I noticed that Mr. Campbell and Ms. Denetria had completed some of the test.
>
> To this date, I have no response from Respondent as to why I have not been selected for a position, nor a response as to why nothing happened between October 2010 and September 2011. I have applied for a volunteer position and I have not heard back.

---

[16] The charge against Texas Department of Health & Human Services has three sentences that differ in form slightly from the charges filed against the other two Defendants, but the substance of the language in all three charges is the same. The former charge states "My complaint has been transferred elsewhere, and I have followed up on complaints with upper management in Austin. There have been no responses to my complaints. Since my complaint, I have been told to complete a 185 question work ethics test, along with six additional tests." The corresponding language in the third paragraph of the charges filed against the other two Defendants states, "My complaint has been transferred elsewhere, and I have followed up on my complaint, I have been told to complete a 185 question work ethics test, along with six additional tests."

> I believe that I am being discriminated against, because
> of my race and national origin (German) and retaliated
> against for complaining, in violation of Title VII of the
> Civil Rights Act of 1964, as amended, and I believe that
> I am being discriminated against, because of my age (72),
> in violation of the Age Discrimination in Employment Act
> of 1967, as amended.[17]

On its face, the Particulars section in each of Plaintiff's three EEOC charges does not allege any of the elements of a disparate impact claim. The entire substance of Plaintiff's complaint is that he suffered disparate treatment and retaliation, noting that he has been unsuccessful in securing employment with any of Defendants and that after he complained he was told he needed to complete additional testing. Plaintiff does not plead any neutral employment policy that would form the basis of a disparate impact claim. *See* <u>Pacheco</u>, 448 F.3d at 792 ("A neutral employment policy is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justifications for the policy."). Plaintiff does state that he was "told to complete a 185 question work ethics test, along with six additional tests" and that he was told to take a "communication test (computer),"[18] but there is no allegation that these requirements have a disparate impact upon any of Plaintiff's protected classes. Thus, an EEOC

---

[17] <u>Id.</u>, ex. A.

[18] <u>Id.</u>, exs. A, B, C.

disparate impact investigation cannot reasonably be expected to have grown out of the facts in any of Plaintiff's EEOC charges, and Plaintiff's disparate impact claim is dismissed under Rule 12(b)(1). *See* id. ("In this case, we hold that a disparate-impact investigation could not reasonably have been expected to grow out of Pacheco's administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only."). Plaintiff's disparate impact claim is dismissed for lack of jurisdiction.

### III. <u>Motion to Dismiss for Failure to State a Claim</u>

A.  <u>Legal Standard</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded

facts in the complaint. *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65.

B.   <u>Analysis</u>

   1.   Title VII Discrimination

"The Title VII inquiry is 'whether the defendant intentionally discriminated against the plaintiff.'" <u>Johnson v. Louisiana</u>, 351 F.3d 616, 621 (5th Cir. 2003) (quoting <u>U.S. Postal Serv. Bd. of Governors v. Aikens</u>, 103 S. Ct. 1478, 1482 (1983)). Although there is no heightened pleading standard in a Title VII case and Plaintiff need not plead all elements of a *prima facie* case, <u>Swierkiewicz v. Soreman N.A.</u>, 122 S. Ct. 992 (2002), he must at least allege facts, direct or circumstantial, that would suggest

11

Defendants' actions were based on Plaintiff's race or national origin or that Defendants treated similarly situated job applicants of other races or national origin more favorably. *See* <u>Raj v. Louisiana State University</u>, 714 F.3d 322, 331 (5th Cir. 2013). In other words, Plaintiff must plead sufficient facts "'to raise [his] right to relief above the speculative level.'" <u>Id.</u>, quoting <u>Bass v. Stryker Corp.</u>, 669 F.3d 501, 506 (5th Cir. 2012).

Plaintiff alleges that he is a member of a protected class and that he was not hired for any of a wide variety of 310 positions ("by now more than 325") for which he applied. Plaintiff alleges he was interviewed for five positions, but as for the hundreds of other job applications that he sent to Defendants, he does not allege that the positions remained open and that the employer continued to seek applicants from persons of Plaintiff's qualifications or that the positions were filled by someone outside of Plaintiff's protected class. *See* <u>Blow v. City of San Antonio</u>, 236 F.3d 293, 296 (5th Cir. 2001). Plaintiff simply asserts that his applications for these positions went unanswered.[19] While Plaintiff is not required to plead each prong of a *prima facie* case for disparate treatment at this stage, his complaint does not allege any direct or circumstantial facts that suggest it was Plaintiff's race or national origin that led to Defendants' not inviting Plaintiff for more interviews as he besieged their offices

---

[19] Document No. 26-1 at 10 of 42 to 11 of 42.

12

with applications by the scores or hundreds, nor does Plaintiff plead that any similarly situated applicants of other races or national origins were treated more favorably. *See* Raj, 714 F.3d at 331 (dismissing Title VII claim where "Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably."). Plaintiff fails to state a plausible claim for Title VII discrimination as to these positions.

Plaintiff's First Amended Original Complaint does identify five positions for which Plaintiff received interviews: (1) Material Handler for the Health and Human Services Commission, (2) Volunteer Coordinator of Foster Grandparent Program for the Texas Department of Aging and Disability Services,[20] (3) Material Handler/Driver for the Texas Department of Aging and Disability Services, (4) Director of Vocational Services for the Texas Department of Aging and Disability Services, and (5) Vehicle Driver II for the Texas Department of Aging and Disability Services.[21] As

---

[20] In the first part of his complaint, Plaintiff identifies this position as "Volunteer Coordinator of Foster Grandparent Program." Document No. 26-1 at 7 of 42. Plaintiff later identifies this position as "Director of Foster Grandparents." Id. at 18 of 42. The Court uses the term Volunteer Coordinator for the sake of consistency.

[21] Document No. 26-1 at 7 of 42 to 8 of 42.

to the Material Handler, Material Handler/Driver, Director of Vocational Services,[22] and Vehicle Driver II positions, Plaintiff does not allege that these positions either remained open after Plaintiff was interviewed or that Defendant filled the position with someone outside Plaintiff's alleged protected classes of race and national origin, nor does Plaintiff plead any other facts from which it may be inferred that Plaintiff was not employed for the job because of his race or national origin. *See* Raj, 714 F.3d at 331. Thus, Plaintiff fails to state a plausible Title VII claim as to these positions.

Plaintiff alleges that after his interview for the position of Volunteer Coordinator of Foster Grandparent Program, a job posted by Defendant Texas Department of Aging and Disability Services,[23] the job was filled by a "black Peace Corp volunteer from Belize." Defendants argue, citing Twombly, that "the mere recital that Finch was not hired while a black applicant was, while potentially consistent with an allegation of discrimination does not plausibly

_____

[22] Plaintiff alleges that Defendant hired a person who "was about 40 years younger than the Plaintiff" to fill the Director of Vocational Services position. Id. at 17 of 42. Plaintiff's age discrimination claims, however, were dismissed for lack of subject matter jurisdiction. Document No. 56.

[23] Document No. 26-4 at 16 of 17. Defendants argue that "Finch makes no specific allegation against any of the three separate State Defendants and Finch has articulated no basis to hold any single defendant liable for the hiring decisions of one of the co-defendants." Document No. 59 at 9. Plaintiff actually does include a list of positions that he applied for and interviewed for that is specific to each of the individual defendants.

14

support a reasonable inference of discrimination."[24]   In this instance, however, Plaintiff additionally pleads that he had exceedingly high qualifications, that he has numerous earned college credits in a variety of business administration courses, that he graduated "Suma [sic] Cum Laude," and has many years of business experience.  He pleads that Defendants invited him for an interview after "qualifying" him for employment, and that his qualifications were "well beyond the defendant's expectations as reflected by the Defendants posted job descriptions and job requirements."  Although Plaintiff's pleading is not a model of clarity, at least with respect to this position of Volunteer Coordinator of Foster Grandparent Program, at the pleading stage Plaintiff has sufficiently alleged a plausible claim that Defendant intentionally discriminated against him by employing a person not in Plaintiff's protected classes, whose qualification consisted of being a Peace Corp. volunteer, and who implicitly was not as well qualified for the job as Plaintiff by education and experience. The motion to dismiss this claim will therefore be denied.

2.   Title VII Retaliation

To state a Title VII retaliation claim, Plaintiff must allege that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link existed between

---

[24] Document No. 59 at 9.

the protected activity and the adverse action.   Richards v. JRK
Prop. Holdings, 405 F. App'x 829, 831 (5th Cir. 2010).   Plaintiff
alleges that Defendants retaliated against him in several ways for
filing EEOC charges and for filing this lawsuit.[25]   Defendants move
to dismiss these retaliation claims because Plaintiff has not
alleged that any causal link existed between Plaintiff filing his
EEOC charges and filing this lawsuit and Defendants' alleged
retaliatory actions.[26]   Indeed, assuming that Plaintiff's list of
alleged retaliatory acts were in fact adverse employment actions
within the scope of Title VII, Plaintiff has failed to plead facts
demonstrating that the acts alleged were taken by Defendants in
retaliation for Plaintiff filing EEOC charges or a lawsuit.[27]
Moreover, with a couple of exceptions, Plaintiff does not allege
how much time elapsed between the protected activity and the
allegedly adverse actions against him, thereby precluding an
inference of retaliation simply based on the adverse action having
been taken very close in time after Plaintiff's protected activity.
See Clark Cnty. Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001)

---

[25] These retaliatory actions include: not hiring Plaintiff,
requiring Plaintiff to complete various tests, blocking Plaintiff
from the online application system, denying Plaintiff pre-interview
information, discourteous pre-interview treatment, and leaving the
interview process incomplete.   Document No. 26-1 at 9 of 42, 15
of 42.

[26] Document No. 59 at 10-11.

[27] Document No. 26-1 at 9 of 42, 15 of 42.

16

("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citations omitted). Here, Plaintiff has failed to allege sufficient facts to state a plausible retaliation claim under Title VII as to nearly all of Defendants' alleged retaliatory acts.

The only arguable exceptions to Plaintiff's failure to allege temporal proximity as evidence of a causal link for his retaliation claims is found in his allegations that Defendants gave him only one more interview notwithstanding hundreds of applications, and changed an occupational requirement for posted positions, both "shortly after" Plaintiff filed his EEOC charges.[28] On the first of these exceptions, Plaintiff elsewhere pleads that before filing his EEOC charge he had received only five interviews in a one and one-half year period in which he had applied for 56 positions. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001). Hence, although Plaintiff alleges that he had only one interview after filing his EEOC charge, the fact that

---

[28] Id. at 24 of 42 and 25 of 42.

17

Defendants were denying him interviews on dozens of applications well before he ever engaged in his protected activity, precludes any inference that his protected activity was the cause of Defendants refusing to grant interviews to Plaintiff.

Plaintiff's other alleged act of retaliation said to have occurred "shortly after" Plaintiff filed his EEOC charge, was that Defendants changed an occupational requirement, "which in turn affected the rest of the surrounding population," for jobs sought by Plaintiff. A change in the application process or job requirements that applies to all similarly situated applicants in the same way--unlike one that targets a particular applicant--is not an adverse employment action. *See* <u>Cherry v. Shaw Coastal, Inc.</u>, 668 F.3d 182, 188 (5th Cir. 2012) (finding the alleged actions were not retaliatory because "[t]he changes did not affect [plaintiff] alone but applied to everyone in his position, and therefore cannot be characterized as retaliatory"). Thus, Plaintiff fails to state a plausible claim that Defendants retaliated against him by posting a generally applicable new requirement for positions for which he applied. In sum, Plaintiff's First Amended Complaint fails to state a plausible claim for retaliation upon which relief can be granted.

## IV. <u>Order</u>

For the foregoing reasons, it is

18

ORDERED that Defendants Texas Health and Human Services Commission's, Texas Department of Family and Protective Services's, and Texas Department of Aging and Disability Services's Third Motion to Dismiss (Document No. 59) is GRANTED as follows: Plaintiff's disparate impact claims under Title VII are DISMISSED as to all Defendants without prejudice for lack of Subject Matter Jurisdiction. Plaintiff's remaining Title VII claims against Defendants Texas Department of Family and Protective Services and Texas Health and Human Services Commission are DISMISSED with Prejudice for failure to state a claim; and those remaining Title VII claims against Defendant Texas Department of Aging and Disability Services are DISMISSED with prejudice for failure to state a claim, *except only* for Plaintiff's Title VII claim for failure to hire Plaintiff for the Volunteer Coordinator of Foster Grandparent Program, which claim remains for adjudication.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this <u>25th</u> day of September, 2015.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE